## No. 26828

**Ruby Jones v. Douglas Hildebrant, and the City and County of Denver, a Municipal Corporation**

(550 P.2d 339)

Decided May 24, 1976.                    Rehearing denied June 21, 1976.

Walter L. Gerash, for plaintiff-appellant.

Wesley H. Doan, Joseph A. Davies, for defendants-appellees.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Plaintiff-appellant Jones recovered, as the result of a jury trial, a $1500 judgment against the defendants-appellees Hildebrant and the City and County of Denver for the wrongful death of her fifteen-year-old son. She appeals from this judgment solely on the damage issue. We find no error and thereform affirm the judgment of the trial court.

In her complaint, plaintiff alleged that defendant Hildebrant, while acting in his capacity as a Denver police officer, wrongfully shot and killed her son. The City and County of Denver was joined as a defendant because of its alleged liability as a principal. Her amended complaint stated three claims for relief: (1) battery, (2) negligence, and (3) a violation of civil rights. The first two claims were based on the Colorado wrongful death statute, section 13-21-202, C.R.S. 1973. The third claim was premised on 42 U.S.C. § 1983. It will be referred to as the § 1983 claim in this opinion. She prayed for $1,500,000 compensatory damages and $250,000 exemplary damages.

It was admitted that defendant Hildebrant intentionally shot plaintiff's son while acting within the scope of his employment and under color of state law. Liability was denied, however, on the basis that the defendant police officer was attempting to apprehend a fleeing felon or in the alternative was acting in self-defense, and that he was using no more force than was reasonably necessary for these purposes.

Prior to trial, the court dismissed the § 1983 claim, ruling that it merged with plaintiff's other claims under the Colorado wrongful death statute. In addition, the trial court ruled that the wrongful death statute did not permit the recovery of punitive damages, and it also limited plaintiff's recovery to a maximum of $45,000 because she was not a dependent of the deceased. After being instructed that plaintiff could recover only the pecuniary losses she sustained as a result of the death of her son,[1] the jury returned a verdict of $1500 in her favor.

---

[1] In accordance with our ruling in *Herbertson v. Russel*, 150 Colo. 110, 371 P.2d 422 (1962), the jury was instructed that net pecuniary loss is the financial loss sustained by the plaintiff as a result of the death of her son. Such losses would include the value of any services that he might have rendered and earnings he might have made while a minor together with any support he might have been expected to provide her after he became an adult, less the expenses she would have incurred in maintaining him.

4

Plaintiff asserts that the judgment should be reversed and a new trial ordered on the issue of damages because (1) her damages under the wrongful death statute were unconstitutionally restricted by the net pecuniary loss rule, (2) that her recovery was inadequate, as a matter of law, and (3) that additional damages should have been permitted under her § 1983 claim because that cause of action was not limited by the pecuniary loss rule.

## I.

■ Plaintiff-appellant asserts that this court erred in *Pierce v. Conners*, 20 Colo. 178, 37 P. 721 (1894), when it interpreted the wrongful death statute as permitting the recovery of only compensatory damages for the loss of a decedent's services and support and not permitting the recovery of damages for the survivor's grief or for punitive damages. As a result, she argues that her statutory remedy has been unjustly restricted in violation of her rights under Colo. Const. Art. II, § 25, and the Fourteenth Amendment of the United States Constitution. Alternatively, she argues that "net pecuniary loss" should be defined to include the pecuniary value of her loss of comfort, society and protection.

This court has rejected similar arguments on numerous occasions and has adhered to the net pecuniary loss rule. *See, e.g., Kogul v. Sonheim*, 150 Colo. 316, 372 P.2d 731 (1962); *Herbertson v. Russel*, 150 Colo. 110, 371 P.2d 422 (1962); *Denver & R.G.R.R. v. Spencer*, 27 Colo. 313, 61 P. 606 (1900). In response to the argument that the rule unjustly restricts her statutory remedy, we stated in *Herbertson* that

"[t]he suggestion that this Court should depart from its prior pronouncements defining the measure of damages recoverable under our wrongful death statute would do utter violence to the well-established rule of statutory construction that when a legislature repeatedly reenacts a statute which has theretofore received a settled judicial construction, there can be no doubt as to the legislative intent, and in such circumstances it must be considered that the particular statute is re-enacted with the understanding that there be adherence by the judiciary to its former construction. . . ."

■ Also, in *Kogul*, we specifically held that the net pecuniary loss rule does not allow for the compensation of parental grief.

We therefore adhere to the precedent firmly established in this state and reject the defendant's request to overrule our previous pronouncements on the law in this state on the "net pecuniary loss" rule.

## II.

■ The plaintiff also maintains that the verdict returned by the jury is inadequate, as a matter of law, on the basis of the evidence of her son's

habits of industry and disposition to help her. Based on our review of this record, we cannot conclude that the verdict is "grossly and manifestly inadequate" as to "clearly and definitely indicate that the jury neglected to take into consideration evidence of pecuniary loss or were influenced either by prejudice, passion or other improper considerations." *See, Kogul v. Sonheim, supra.*

The evidence of plaintiff's damages was vague and insubstantial. She testified that her son occasionally helped her with household chores, that he once worked at the East Side Action Center, and that from his earnings there, he once gave her $30 to pay a utility bill. No documentary evidence of funeral expenses was apparently offered to the jury, though some evidence tended to show that these expenses were approximately $1000. Under these circumstances, the trial court refused to set aside the verdict of the jury,[2] and to order a new trial on the damage issue alone. We agree with the trial court's ruling.

### III.

Plaintiff-appellant next contends that her § 1983 claim should not have been dismissed because it would have permitted her to recover damages not otherwise available under the state wrongful death action, including punitive damages and damages for mental anguish and loss of society. She advances what are, in reality, four distinct theories to support her position.

Her first theory, although confusingly stated, seems to be that the state wrongful death statute recognizes her claim to a civil right to her son's life, which was denied her without due process of law through his wrongful killing. This argument, in our view, misperceives the meaning of either "liberty" or "property" as protected by the Due Process Clause.

The United States Supreme Court in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), has recently addressed this question in an analogous § 1983 case where the issue was whether or not a person's right to sue for damages to his reputation under state law created a right to "property" or "liberty" which was unconstitutionally denied him when a state officer allegedly defamed him. The Court held that such a right to sue for damages did not create a right which could be denied solely by the underlying act of defamation. Accordingly, the Court distinguished the right to sue from other property rights, such as, a driver's license:

"In each of these cases [e.g., the suspension of a driver's license], as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished. It was this

---

[2] *Compare Kogul v. Sonheim, supra*, in which this court upheld an award of $700 for the wrongful death of a three-year-old child.

alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the 'liberty' or 'property' recognized in those decisions. Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioner's actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the state's laws."

The logic behind the Supreme Court's distinction is evident. The right to sue becomes a right protected by the Fourteenth Amendment only when the statutorily guaranteed access to the courts is denied. Therefore, where, as here, the state allows a plaintiff to bring her suit, she is not deprived of any of her civil rights without due process of law.[3]

Secondly, the plaintiff argues that although § 1983 does not expressly create a wrongful death action for a violation of civil rights, 42 U.S.C. § 1988 authorizes the incorporation into federal law of state wrongful death remedies to vindicate violations of civil rights that result in death. She further contends that only that part of the state law granting her this right to sue should be incorporated, but not the state law relating to damages.

We agree with the plaintiff that the federal courts have commonly ruled that § 1988 permits the incorporation of the states' non-abatement statutes[4] and wrongful death statutes[5] into § 1983 actions in order to ef-

---

[3]*Accord, Jones v. Murphy*, 392 F. Supp. 641 (E.D. Ala. 1975), which held that an administratrix's rights under the Alabama wrongful death statute was not a property right protected by the Fourteenth Amendment.

[4]The following courts have held that § 1983 actions which accrued during the lifetime of the decedent do not abate at his death but survive to his estate according to state law: *Spence v. Staras*, 507 F.2d 554 (7th Cir. 1974); *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1974); *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961); *Troutman v. Johnson City*, 392 F.Supp. 556 (E.D. Tenn. 1973); *Javits v. Stevens*, 382 F.Supp. 131 (S.D. N.Y. 1974). *See also* Annot., 88 A.L.R. 2d 1153.

[5]The following cases have incorporated the states' wrongful death remedies into § 1983 actions so that a personal representative can bring actions in behalf of certain designated beneficiaries or so that the beneficiaries themselves may bring an action in their own right: *Wolfer v. Thaler*, 525 F.2d 977 (5th Cir. 1976); *Spence v. Staras, supra*, n. 4; *Mattis v. Schnarr*, 502 F.2d 588 (8th Cir. 1974); *Brazier v. Cherry, supra*, n. 4; *Smith v. Wickline*, 396 F.Supp. 555 (W.D. Okla. 1975); *Jones v. Murphy, supra*, n. 3; *Pollard v. United States*, 384 F.Supp. 304 (M.D. Ala. 1974); *Bailey v. Harris*, 377 F.Supp. 401 (E.D. Tenn. 1974); *Smith v. Jones*, 379 F.Supp. 201 (1973), *sum. aff'd.*, 497 F.2d 924; *Love v. Davis*, 353 F.Supp. 587 (W.D. La. 1973); *Galindo v. Brownell*, 255 F.Supp. 930 (S.D. Cal. 1966).

fectually implement the policies of that legislation.[6] For example, the leading case, *Brazier v. Cherry, supra*, n. 4, allowed a surviving widow to recover damages sustained by the decedent during his lifetime and damages sustained by his survivors as a result of his wrongful death by incorporating the Georgia survival statutes. The court reasoned that the civil rights legislation was designed to protect citizens not only from violence which would cripple but also from violence that would kill. However, because no express provision was established for the survival of § 1983 claims where death occurs, the court held that Congress must have intended to adopt as federal law the forum state's law on survival by means of § 1988. The Supreme Court also concluded that 42 U.S.C. § 1986, which provides for a limited survival action for suits brought under § 1985 which relates to conspiracies to deprive others of their civil rights, should not be interpreted as demonstrating a Congressional intent to exclude survival remedies from other portions of the Act. Rather, it held that, to be consistent with the manifest Congressional intent to provide a civil rights remedy even when death occurs, the omission of expres survival remedies in § 1983 was indicative of Congressional intent to incorporate state remedies.

■ We therefore conclude that Colorado's wrongful death remedy would be engrafted into a § 1983 action if brought in a federal court. However, because the instant suit was brought in state court and joined with a suit under the state wrongful death statute, the trial court properly ruled that the two actions were merged so that the § 1983 claim should be dismissed.[7]

Furthermore, because the allowable damages are such an integral part of the right to bring a wrongful death remedy, we believe the state's law on damages should also apply.[8] Though not directly ruling on this is-

---

[6]In *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the Court held that § 1988 was not intended to be a basis for an independent cause of action but it was designed only to permit the incorporation of state remedies to effectuate causes of action that arise in other parts of the civil rights act. It then cited *Brazier* with apparent approval as an example of the proper incorporation of state law under § 1988. Consistently, the Court in *Moragne v. States Marine Lines, infra.*, n. 10, characterized a wrongful death action as essentially remedial because it does not impose an additional duty of care on the tort-feasor.

[7]The suit under the state claim was, in fact, a broader remedy. because it allowed a recovery against the City and County of Denver, which because of its status as a municipality, would not probably be liable under § 1983. *See Moor v. County of Alameda, supra*, n. 6, and *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

[8]Our ruling thus accords with what appears to be the federal policy of wholly incorporating state wrongful death remedies when incorporation of state law is the Congressional intent. For instance, in *The Tungus v. Skovgaard*, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959), the Court observed that the "policy expressed by a State Legislature in enacting a wrongful death statute is not merely that death shall give rise to a right of recovery, nor even that tortious conduct resulting in death shall be actionable, but that damages shall be recoverable when conduct of a particular kind results in death. It is incumbent upon a court enforcing that policy to enforce it all; it may not pick or choose."

sue, federal courts have implicitly adopted the state limitations on wrongful death damages. In *Smith v. Wickline, supra*, n. 5, the Oklahoma wrongful death remedy was adopted even though it did not allow the recovery of punitive damages. In *Galindo v. Brownell, supra*, n. 5, the California wrongful death statute was used even though it only allowed the recovery of pecuniary losses by a parent.[9] Finally, in *Jones v. Murphy, supra*, n. 3, only punitive damages were allowed because the Alabama law did not allow compensatory or actual damages.

■ Plaintiff Jones' third theory is that a federal wrongful death remedy impliedly exists in § 1983, independent of state wrongful death remedies. Though the United States Supreme Court has ruled that federal wrongful death remedies impliedly exist in some areas[10] of the law, we do not believe that such a remedy exists with § 1983 claims. This belief is based on the perceived Congressional intent not to pre-empt the states' carefully wrought wrongful death remedies, the adequacy in a death case of the state remedies to vindicate a civil rights violation, and the overwhelming acceptance of such state remedies in the federal courts.[11]

The plaintiff's fourth and final theory for obtaining a separate recovery under her § 1983 claim is that she was deprived of her own constitutional rights. While not forthrightly articulating just what those rights are, she alleges in her complaint that her rights were violated because her child's right to life, his right to freedom from physical abuse and intimidation, and his right to equal protection of the laws were violated.

■ These deprivations, however, are really those of her son. The federal courts have consistently held that one may not sue for the deprivation of another's rights under § 1983, and that a cause of action can be maintained only by the "person injured." *See Hall v. Wooten, supra*, n.

---

[9]*See also Spence v. Staras, supra*, n. 4, where the Illinois wrongful death remedy, which permitted the recovery of only pecuniary losses, was incorporated into a § 1983 suit. The court there allowed the recovery of punitive damages but its reasons for doing so are unclear. Most likely, the court allowed such damages in connection with another claim based on the damages sustained by the decedent while he was alive, damages which the court noted were recoverable under Illinois law.

[10]For instance, in *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Court held that an implied action for wrongful death based on unseaworthiness is maintainable under federal maritime law by the decedent's dependents. In *Sea-Land Services v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the Court began to spell out some of the parameters of the remedy when it ruled that the wrongful death remedy would allow the recovery of pecuniary losses, funeral expenses and loss of society.

[11]Were we to rule otherwise, this court would have to fashion a remedy for a federal right bottomed on a federal statute that itself has no provisions concerning the class of beneficiaries, the proper parties to bring suits, and the type of damages. For example, it is still unclear in a *Moragne* wrongful death action whether such an action is limited to dependents only. *See, e.g., Hamilton v. Canal Barge Co.*, 395 F.Supp. 978 (E.D. La. 1975).

4, and *Javits v. Stevens, supra,* n. 4, and cases cited therein. She therefore cannot sue in her own right for the deprivation of her son's rights apart from her remedy under the wrongful death cause of action.

Furthermore, the state did not directly attempt to restrict her own personal decisions relating to procreation, contraception, and child-rearing which are involved in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Although the death of a family member represents a loss to her, we, nonetheless, are of the opinion that § 1983 was not designed to compensate for these collateral losses resulting from injuries to others. Otherwise, damages would infinitely extend not only to parents and children, but to siblings and perhaps even to a "family" of close friends. The interests protected by § 1983 are adequately vindicated when actions are brought by the injured parties themselves, or at their death, by those designated in our wrongful death statute.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES dissent.

MR. JUSTICE KELLEY does not participate.

MR. CHIEF JUSTICE PRINGLE dissenting:

I respectfully dissent.

I do not believe that Colorado's judicial limitation of net pecuniary loss as a measure of damages for wrongful death applies to actions founded upon 42 U.S.C. § 1983 (1970).

I am authorized to say that MR. JUSTICE GROVES joins in this dissent.