Andrew ESPINOZA, individually and as Personal Representative of the Estate of Arthur Espinoza, deceased, and as guardian of Jeanne Espinoza and Judith Espinoza, minors; Arthur Espinoza, Jr., Barry Espinoza, and Beverly Espinoza, heirs-at-law of the deceased, and the Estate of Arthur Espinoza, deceased, Plaintiffs-Appellants,

v.

John O'DELL, Gary Graham and David Neil, Arthur Dill, Chief of Police of the City of Denver, and The City and County of Denver, Defendants-Appellees.

No. 79SC5.

Supreme Court of Colorado.

May 4, 1981.

As Modified on Denial of Rehearing June 8, 1981.

Gerash & Springer, P. C., Scott H. Robinson, Denver, for petitioners.

Chesler & Makaroff, Michael V. Makaroff, Denver, for John O'Dell and Gary Graham.

Bruno, Bruno & Bruno, Louis B. Bruno, Denver, for David Neil.

Max P. Zall, City Atty., Lloyd K. Shinsato, Gregory C. Denton, Don K. DeFord, Asst. City Attys., Denver, for Arthur Dill and The City & County of Denver.

ROVIRA, Justice.

This is an appeal from the dismissal of a complaint which asserted claims on behalf of the estate of Arthur Espinoza, by the personal representative of the estate, and by the children of Arthur Espinoza, who are his heirs at law, against three police officers, the Chief of Police of Denver, and the City and County of Denver.[1]

The complaint alleged:

(1) that defendants O'Dell, Graham, and Neil, while acting under the color of their authority as Denver police officers, wrongfully shot and killed Arthur Espinoza in Denver on July 30, 1977, and that such act was done willfully, maliciously, and with a wanton disregard for the rights and feelings of the decedent and his children;

(2) that the three officers and Chief of Police Dill, while acting under color of law and as servants and employees of the City and County of Denver, conspired to intentionally deprive Arthur Espinoza, his estate, and his children of their rights, including decedent's right to life, his children's right to their father's continued life, equal protection of the law and due process of the law;

(3) that such actions on the part of the defendants deprived the decedent and his children of his and their rights, privileges, and immunities as secured by the First, Fourth, Fifth, Ninth, Ten, and Fourteenth Amendments to the United States Constitution, the Constitution of the State of Colorado, and 42 U.S.C. 1983 and 1985;

(4) that as a direct and proximate consequence of the defendant's actions, the plaintiffs were entitled to general damages in the amount of $2 million, an undetermined amount as special damages, and reimbursement for funeral and burial expenses.

The police officer defendants urged dismissal of the complaint, claiming *inter alia*, that "a federal wrongful death remedy does not exist pursuant to 42 U.S.C. 1983 or 1985 independent of the Colorado wrongful death remedies" and that the plaintiffs had sought no state wrongful death recovery in this case.

The Chief of Police and the City and County of Denver also moved to dismiss the complaint and, in addition to the grounds stated by the other defendants, argued that the Chief of Police was not liable under the doctrine of *respondeat superior* for the acts of his subordinates and that the City and County of Denver is not a "person" under 42 U.S.C. 1983 and 1985.

The trial court in reliance on *Jones v. Hildebrant*, 191 Colo. 1, 550 P.2d 339 (1976), *cert. dismissed*, 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977), granted the motions to dismiss, holding that a federal wrongful death remedy does not exist under 42 U.S.C. 1983 or 1985 independent of state wrongful death remedies, that the Colorado Wrongful Death statute is not "inhospitable" to the underlying policies of these federal causes of action, and that, since the plaintiffs made no claims pursuant to available state death remedies, the complaint failed to state a claim upon which the relief prayed for could be granted.

The trial court also ruled that the defendant Dill could not be held liable under the doctrine of *respondeat superior*, and that the City and County of Denver was a municipality and not a "person" and therefore not amenable to suit under § 1983.

---

1. The writ of certiorari was issued to the Court of Appeals before it rendered judgment. *See* C.A.R. 50.

We reverse the trial court's dismissal of the plaintiffs' § 1983 action, affirm its dismissal of the plaintiffs' claims based on 42 U.S.C. 1985, affirm its dismissal of claims against the City and County of Denver and against Dill, and direct it to allow further amendment of the pleadings as the interests of justice require.

## I.

### 42 U.S.C. § 1983

■ This case raises a number of questions relating to the nature and scope of claims arising under 42 U.S.C. § 1983 in state courts.[2] This federal statute derives from § 1 of the Civil Rights Act of 1871 and was enacted under the power vested in Congress by § 5 of the Fourteenth Amendment to the United States Constitution. Broadly described, the intent of § 1983 was to create a civil remedy for persons who prove that one acting under color of state law has illegally deprived them of rights guaranteed by the federal constitution or by federal law. Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ Standing alone, § 1983 provides no protection for civil rights because it creates no independent substantive rights at all. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). By its plain terms, the statute extends liability to those who, under color of state authority, deprive others of "any rights, privileges, or immunities secured by the Constitution and [federal] laws." Its language includes no description of the type of remedies or punishments which its violation entails. Instead, as this court recognized in *Jones v. Hildebrant, supra*, a right based upon a violation of § 1983 was intended by Congress to be vindicated by means of remedies and punishments established under state law, at least so far as the state law is not "inconsistent with the Constitution and laws of the United States."[3] 42 U.S.C. § 1988. *See Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).[4]

2. State courts have concurrent jurisdiction to entertain claims brought under 42 U.S.C. § 1983. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). The courts of Colorado have accepted jurisdiction of this statutory cause of action. *Thorpe v. Durango School District*, 41 Colo.App. 473, 591 P.2d 1329 (1979), *aff'd*, Colo., 614 P.2d 880 (1980).

3. 42 U.S.C. § 1988 provides in pertinent part as follows:

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but *in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause*, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty." (Emphasis added.)

4. Although the need to refer to state remedies and limitations in § 1983 actions, as an initial matter, is clear under the federal statutory scheme because § 1983 lacks specific provisions which furnish remedies or set limitations, the nature of "inconsistency" between state and federal law is not completely clear. The proper application of 42 U.S.C. § 1988, as a choice of law provision, is itself a subject of some controversy. *See Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (Brennan, J., dissenting); *Robertson v. Wegmann, supra* (Blackmun, J., dissenting); *Jones v. Hildebrant, supra* (White, J., dissenting). *See also* Eisenberg, *State Law*

■ We find that the trial court erred in ruling that a state wrongful death action was the plaintiffs' sole method of recovery in Colorado.[5] In order to guide the trial court in its conduct of proceedings on remand, we go on to determine whether any of the plaintiffs in this case are entitled to assert a claim for relief under § 1983 that allows a recovery of damages different from the remedies and limitations that apply to plaintiffs who might bring a comparable claim for relief under state law alone. We distinguish two possible state statutes which bear upon this question: (1) a claim for wrongful death, arising under section 13–21–202, C.R.S. 1973, brought by surviving parties whose claim is based upon a fatal injury done to the deceased;[6] and (2) a survival action brought under section 13–20–101, C.R.S. 1973, by the deceased's personal representative for the benefit of the estate.[7]

■ In order to answer the question of remedies and limitations, we must determine whether existing state law is inconsistent with the federal policies underlying § 1983. To the extent that any fundamental inconsistency exists between the state and federal policies, a claimant under § 1983 is not limited to recovery under state law; and separate rules for recovery, consistent with federal policies, must be adopted. *See Robertson v. Wegmann, supra.*

## A.

### The Claim for Relief

Relying on its interpretation of our decision in *Jones v. Hildebrant, supra,* the trial court ruled that a state wrongful death action was the plaintiffs' sole means of recovery. The plaintiffs did not claim damages under the wrongful death statute, but instead based their claim on § 1983 alone. Therefore, the court dismissed their suit.

In *Jones v. Hildebrant, supra,* the mother of the decedent stated three claims for relief in their suit: (1) battery, (2) negligence, and (3) violation of civil rights. The first two claims were based on the wrongful death statute, and the third claim was premised on § 1983. No survival action was brought by the personal representative of the deceased. In accordance with the provisions of 42 U.S.C. § 1988, we held that the state's wrongful death remedy was identical to the remedy which would be engrafted upon a § 1983 action in a federal court. For purposes of § 1983 actions in state court, we held that the substantive claims "merged," and we affirmed the trial court's dismissal of the § 1983 claim.[8]

The present case may be distinguished from *Jones* in two significant respects: (1) the plaintiffs here have proceeded solely under claims that their federal rights have been violated, and (2) the personal repre-

*in Federal Civil Rights Cases: The Proper Scope of Section 1988,* 128 *U.Pa.L.Rev.* 499 (1980).

5. *See* Part I(A) of this opinion, *infra.*

6. *See* Part I(B) of this opinion, *infra.*

7. *See* Part I(C) of this opinion, *infra.*

8. When *Jones* was decided, the § 1983 plaintiff was completely barred from recovering from the municipality that employed the police officer defendants. At that time, the state wrongful death action provided the plaintiff a "broader remedy" than would have been permitted her under § 1983. *Id.,* 191 Colo. at 7, n. 7, 550 P.2d at 344. *But see* Note, *Damages in Section 1983 Action Controlled by State Law: Jones v. Hildebrant,* 55 *Den.L.J.* 291 (1978).
 Since our decision in *Jones,* the immunity status of municipal defendants has radically altered. *Compare Owen v. City of Independ-*

ence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) *and Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) *with Moor v. County of Alameda, supra,* and *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). *See* Part II of this opinion, *infra.* Furthermore, 42 U.S.C. § 1988 has been amended to provide that, in any action or proceeding to enforce a provision of § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. No. 94–559, § 2, 90 Stat. 2641 [codified as the second sentence of 42 U.S.C. § 1988 (1976)]. This provision of § 1988 has been applied to § 1983 claims brought in state court as well as those pursued in federal court. *Maine v. Thiboutot, supra,* n.2. *See Thorpe v. Durango School District, supra,* n. 2.

sentative of the decedent has here brought an action on behalf of the decedent himself.

Rights of action are said to "merge" when a person takes or acquires a remedy of a higher nature, in legal estimation, than the one which he already possesses for the same right, thus causing his remedies in respect to the minor right to be absorbed in those attaching to the higher one. *Black's Law Dictionary* at 1140 (Revised 4th ed., 1968). In *Jones* the application of this principle led to a dismissal of the federal claim. However, in this case the plaintiffs have elected to pursue their § 1983 claim apart from all available state-created claims for relief. The issue of the relative superiority of the claims is thus not relevant to the question of whether the plaintiffs can state an independent federal claim for relief.[9] This is merely to say that no merger allowing the dismissal of their federal claim for relief has occurred.

In *Jones* we did not hold that a state wrongful death action is the exclusive method of recovery for one who raises a § 1983 claim for injuries caused to a decedent. Rather, the case stands for the proposition that where a state wrongful death claim is joined with a federal § 1983 claim, the federal claim may be dismissed. *Jones* said nothing about the right of a personal representative to institute a survival action; such a claim was not even a feature of the case. A child's right to institute a § 1983 claim independent of any state wrongful death remedy was simply not addressed.

█ In order to state a claim for relief under § 1983, all that a plaintiff need allege is (1) that some person deprived him of a federal right and (2) that this person acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Applying this standard to the present case, we find that the plaintiffs'

pleadings are clearly sufficient to state a claim for relief. The trial court erred in dismissing the claim.

However, the mere right to bring a § 1983 action says nothing about the remedies and limitations which may apply to such a case. To make these determinations, we go on to consider the present § 1983 action in relation to analogous state claims for relief.

There are two classes of plaintiffs in the present suit who have claimed that they have been deprived of federal constitutional rights by the allegedly illegal killing of Arthur Espinoza by Denver police officers: (1) the decedent's personal representative, acting on behalf of the estate and (2) the decedent's children, as his heirs at law, on the basis of their own constitutional liberty interests in the continuation of their family relationship with the decedent.[10] We treat each of these aspects of the plaintiffs' § 1983 claim separately.

### B.

### *"Wrongful Death"*

At common law, the traditional rule was that an injured party's personal and derivative tort claims were extinguished upon his death. *S. Speiser, Recovery for Wrongful Death,* §§ 1:1 to 1:4 (2d ed. 1975); *W. Prosser, Handbook of the Law of Torts* § 126 (4th ed. 1971); *Robertson v. Wegmann, supra.* State statutes were enacted to ameliorate the consequences of this harsh rule.

In Colorado two methods of recovery have been authorized when an injured party has died: (1) a "survival" action may be brought for the benefit of his estate pursuant to section 13–20–101, C.R.S. 1973,[11] and (2) a wrongful death action may be brought by certain statutorily enumerated persons

---

**9.** As our discussion in footnote 8, *supra,* indicates, a comparison of the state and federal claims for relief would require a consideration of a variety of factors which did not exist when *Jones* was decided. The continuing validity of its merger rule is in serious doubt.

**10.** The plaintiffs claim numerous other constitutional deprivations which we do not find necessary to address. The broad substantive due process interest which we hold to be cognizable here subsumes these other claimed rights in every sense that we now find meaningful.

**11.** *See* Part I(C) of this opinion, *infra.*

whose claim is based upon the fatal injury done to the deceased pursuant to section 13–21–202, C.R.S. 1973. The class of plaintiffs who may bring suit under the latter statute is listed in section 13–21–201(1)(a)(b) and (c), C.R.S. 1973; and for the sake of convenience, we will refer to them as "heirs of the deceased" or "children of the deceased."

In the present case, the children of the deceased claim an interest in his life, for purposes of § 1983, which corresponds by analogy to the interest claimed by the heirs of the deceased in an action brought under our wrongful death statute. *See Jones v. Hildebrant, supra.*

 Section 13–21–202, C.R.S. 1973, provides:

> "When the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured."

The breach of duty to be established under the statute is that owed by the tort-feasor to the deceased, not that owed to the heirs of the deceased. However, the loss which forms the basis for the suit is that suffered by the heirs. *See S. Speiser, supra,* § 2:1 at 66. The wrongful death statute creates a claim for relief and an "entitlement" to damages for parties who have not themselves been directly injured by the actions of the tort-feasor. *Fish v. Liley,* 120 Colo. 156, 164, 208 P.2d 930, 934 (1949).

A plaintiff in a Colorado wrongful death action has been limited in damages to his net pecuniary loss. *See, e. g., Pollock v. City and County of Denver,* 194 Colo. 380, 572 P.2d 828 (1977); *Jones v. Hildebrant, supra; Kogul v. Sonheim,* 150 Colo. 316, 372 P.2d 731 (1962); *Herbertson v. Russell,* 150 Colo. 110, 371 P.2d 422 (1962). The deprivation suffered by the heirs of the deceased—

the proper measure of their damages—has been considered their "property loss," with no additional compensation for the personal injury they claim to have suffered. *Fish v. Liley, supra.*

In the present case, the children of the deceased assert the deprivation of their own personal constitutional liberty interest in the continued life of their father and in the continuance of their family relationship. *See Mattis v. Schnarr,* 502 F.2d 588 (8th Cir. 1974); Glennon, *Constitutional Liberty and Property: Federal Common Law and Section 1983,* 51 So.Cal.L.Rev. 355 (1978). They claim that the termination of their family relationship amounts to the violation of a constitutional liberty and, therefore, they are entitled to an award of damages beyond what would be available to them based on their property loss alone.

 We recognize that the children of the deceased may assert the violation of a constitutional liberty interest as part of a § 1983 action. Ordinarily, one cannot sue for relief over the deprivation of another's civil rights. *Evain v. Conlisk,* 364 F.Supp. 1188 (D.Ill.1973), *aff'd,* 498 F.2d 1403 (7th Cir. 1974). But the due process clause of *U.S.Const.* amend. XIV, extends constitutional protections to the relationship between parent and child. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). *See Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). The parent's liberty interest in the "companionship, care, custody, and management of his or her children" [*Stanley v. Illinois, supra,* 405 U.S. at 651, 92 S.Ct. at 1212], under most circumstances, runs parallel to the child's interest in a continued relationship and association with its parent, upon whom the child is dependent for custody, care, and nurture. *See Wisconsin v. Yoder, supra; Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). *Cf. Sanchez v. Marquez,* 457 F.Supp. 359 (D.Colo.1978) (a sibling relationship does not support a § 1983 cause of action).

Our present task is to assess whether, as required by 42 U.S.C. § 1988, "the common law, as modified and changed by the constitution and statutes" of this state, furnishes suitable remedies to vindicate the liberty interest that has been asserted.

In Colorado the heirs of the deceased have not been denied the right to assert claims for damages. Thus, the asserted purpose of § 1983, to vindicate liberty interests derived from continuing family relationships, has not been entirely defeated at the outset as it would have been if there were no analogous claim for relief in existence under state law. *See Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

■ Nevertheless, the Colorado net pecuniary loss rule limits a wrongful death plaintiff's damages to the financial benefit, if any, which that person might reasonably have expected to receive from the decedent had he lived. *E. g., Herbertson v. Russell, supra.* In the present case, the wrongful death limitation on damages, if applied to a § 1983 judgment on the children's behalf, would provide no compensation to them for any losses flowing from a variety of associational interests, such as paternal love and care, instruction, counseling, emotional support, and the family's mutual enjoyment of life together. All these deprivations are aspects of the liberty interest which the children of the deceased claim has been violated.

We must decide whether the limitation on damages in a wrongful death action sufficiently accounts for the constitutional interest claimed by the children of the deceased. A state's existing measure of compensation for a decedent's injuries is not necessarily the "complete solution" to damage inquiries in a § 1983 action. *Carey v. Piphus, supra,* at 258, 98 S.Ct. at 1049.

"In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common law rules of damages themselves were defined by the interests protected in the various branches of tort law." *Id.* at 258–59, 98 S.Ct. at 1050.

The state and federal policies which the respective legislatures sought to foster must be identified and compared. *Board of Regents v. Tomanio, supra,* n. 4. The substantive limitations which the state has established in regulating the award of damages may be weighed against the federal right asserted and the type of injury alleged in order to discover if the state policy mandating limitations is inconsistent with the federal policy allowing compensation. *See id.; Robertson v. Wegmann, supra; Carey v. Piphus, supra.*

The state has adopted a policy of limiting wrongful death recovery to the actual property loss which has been suffered by the heirs of the deceased. This policy serves to negate any possibility of a windfall to the decedent's heirs by denying them compensation for injuries which were not their own. Their property interest is protected, and the common law denial of all damages is avoided.

■ However, a person's right to recover damages under § 1983 must be evaluated in light of distinctly different concerns. The two principal policies underlying a § 1983 action for deprivation of federal rights are compensation and deterrence. *Robertson v. Wegmann, supra.* Where the government itself becomes the source of danger to an individual's rights, in the absence of some effective mode of redress, the person would be defenseless in the face of official lawlessness. The § 1983 remedy serves to supplement available state remedies. *Monroe v. Pape, supra,* n. 8. Because the wrongdoer acts with special authority under color of his governmental office or employment, the danger of his misuse of power is greater for those subject to it than would be the case if the wrongdoer were acting merely as an individual. His potential liability for violation of another's federal rights serves to restrain illegal behavior and to encourage good faith performance of official duties.

In this case, more than the property loss of the children is at stake. They allege the deprivation of a constitutional liberty interest in a continuing family relationship. This claim does not seem "logically to be subject to a damages limitation contained in the [Colorado wrongful death] statute permitting survivors to recover for wrongs done to a property interest of theirs." *Jones v. Hildebrant, supra,* 432 U.S. at 188, 97 S.Ct. at 2287. On the contrary, state law is inconsistent with § 1983 to whatever extent it is "inhospitable" to the policies of compensation and deterrence which § 1983 is meant to foster. *Robertson v. Wegmann, supra,* 436 U.S. at 594, 98 S.Ct. at 1997. If the state wrongful death limitation on damages were imposed in this case, it would have an "independent adverse effect" on the children's right to compensation for the deprivation of their constitutional liberty interest in family life. *Id.* Important nonpecuniary aspects of the family relationship would go entirely uncompensated. Therefore, we hold that the plaintiff children are not subject to a net pecuniary loss limitation on their right to recover damages in a § 1983 action brought in state court. We overrule our decision in *Jones v. Hildebrant, supra,* to the extent it implied that state wrongful death limitations must be applied to a federal § 1983 claim brought by children of the deceased who allege the deprivation of a constitutional liberty in their continuing relationship with the one whose life has been unlawfully taken under color of state law.

The history of § 1983 gives no indication that Congress "meant to establish a deterrent more formidable than that inherent in the award of compensatory damages" [*Carey v. Piphus, supra,* 435 U.S. at 256, 98 S.Ct. at 1048], except in cases where exemplary or punitive damages are required "to deter or punish malicious deprivations of rights." *Id.* at 266, 98 S.Ct. at 1054. In this case the children of the deceased allege that they have been maliciously deprived of their rights. We hold that it would be inconsistent with the deterrent policy of § 1983 to bar the award of exemplary or punitive damages in situations where the

plaintiffs prove their entitlement to actual damages under § 1983 and prove beyond a reasonable doubt that the defendants acted maliciously or with a wanton and reckless disregard of their rights. *See Colo. J. I.* (Civ.2d) 5:3 (1980). *Cf. Herbertson v. Russell, supra.*

We note that the defendant police officers in this case are entitled to raise the issue of a "qualified immunity" in their defense. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). If they performed their duty with a reasonable, good faith belief in the propriety of their actions, they are not subject to damages. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A defendant's mere negligence or inadvertent conduct does not support an action under § 1983. *Procunier v. Navarette, supra.*

Nevertheless, our holding that general compensatory damages and punitive damages are available to the children of the deceased is premised on the allegations raised in their pleadings. They have stated a claim upon which relief may be granted, and their potential relief is not subject to the net pecuniary loss limitation of the state wrongful death statute.

C.

*"Survival"*

Section 13–20–101(1), C.R.S.1973, provides as follows:

"All causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person in favor of or against whom such action has accrued, but punitive damages shall not be awarded nor penalties adjudged after the death of the person against whom such punitive damages or penalties are claimed; and in tort actions based upon personal injury, the damages recoverable after the death of

the person in whose favor such action has accrued shall be limited to loss of earnings and expenses sustained or incurred prior to death, and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after date of death. An action under this section shall not preclude an action for wrongful death under part 2 of article 21 of this title."

By this statute's express terms, with the exception of defamation, all tort actions survive the death of the injured party. But in "tort actions based upon personal injury," the statute limits damage awards to "loss of earnings and expenses sustained or incurred prior to death," specifically excluding damages for "pain, suffering, or disfigurement" and for "prospective profits or earnings after date of death."

◾ The personal representative of the decedent's estate, by necessity, stands in the decedent's shoes in a state survival action. *Publix Cab Co. v. Colorado National Bank*, 139 Colo. 205, 338 P.2d 702 (1959). *See* section 13–20–101(2), C.R.S.1973. In this case, the personal representative joined as a plaintiff in prosecuting a § 1983 action on behalf of the deceased. *Cf. Jones v. Hildebrant, supra.*

◾ A surviving tort claim under section 13–20–101(1) need not bear a causal relation to the decedent's death. In contrast to a wrongful death action, the decedent's death is not the event which triggers the creation of the claim. Rather, suit is brought in spite of the injured party's death "to prevent certain actions or causes of action *already accrued* from abating by reason of the death of either of the parties." *Brown v. Stookey*, 134 Colo. 11, 14, 298 P.2d 955, 957 (1956) (original emphasis). The estate, not the deceased himself, is the real beneficiary of the surviving cause of action, which serves to compensate the estate for actual property losses it has incurred. *See Publix Cab Co. v. Colorado National Bank, supra; Kling v. Phayer*, 130 Colo. 158, 274 P.2d 97 (1954). The personal representative "owns the action for the benefit of the estate." *Salazar v. Dowd*, 256 F.Supp. 220, 223 (D.Colo.1966).

◾ As the present case now stands, a § 1983 action brought in state court can fully compensate the surviving children for both their economic and associational losses. *See* Part I(B) of this opinion, *supra*. Because the underlying policies of § 1983 have been implemented, it is unnecessary to determine whether any inconsistency exists between the state survival statute's damage limitations and the remedies required under § 1983. *See* 42 U.S.C. § 1988. The personal representative, who in this capacity alone has no constitutionally protected interest in the life of the decedent, is here properly limited to the damages set forth in the state survival statute. *Salazar v. Dowd, supra.*

## II.

### *Municipal Liability*

The trial court, in addition to ruling that a wrongful death action was the sole remedy available to the plaintiffs, held that the defendant municipality had complete immunity from a § 1983 suit under the precedent of *Monroe v. Pape, supra*, n. 8. The parties did not bring to the court's attention the question of whether, pursuant to a proper complaint under § 1983, the defendant City and County of Denver is amenable to suit for constitutional deprivations resulting from formal or informal policies adopted by means of its "official decisionmaking channels." *Monell v. New York City Dept. of Social Services, supra*, n. 8, *overruling in part, Monroe v. Pape, supra*, n. 8. *See Owen v. City of Independence, supra*, n. 8.

◾ Unless it appears to a reasonable certainty that no set of facts supports a plaintiff's § 1983 claim against a municipality, a court should be wary of dismissing the case on pleadings which involve an alleged violation of constitutional rights. *See Davidson v. Dill*, 180 Colo. 123, 503 P.2d 157 (1972); *Sprott v. Roberts*, 154 Colo. 252, 390 P.2d 465 (1964).

◾ Here, the plaintiffs made no factual allegations regarding the official decision making of the municipality. We

have no doubt, therefore, that it is deficient as a matter of law. The doctrine of *respondeat superior* provides no basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees. *Monell v. New York City Dept. of Social Services, supra,* n. 8.

Nevertheless, on remand, further amendment of the plaintiffs' § 1983 claim may be allowed as a matter within the sound discretion of the trial court, if it finds that justice so requires. C.R.C.P. 15(a). *Varner v. District Court,* Colo., 618 P.2d 1388 (1980); *Fischer v. District Court,* 193 Colo. 24, 561 P.2d 1266 (1977); *Coon v. Guido,* 170 Colo. 125, 459 P.2d 282 (1969).

### III.

#### Civil Conspiracy

The trial court dismissed the plaintiffs' claims based upon 42 U.S.C. § 1985(c) for the same reason that it dismissed their § 1983 claim—the availability of a state wrongful death remedy. It also held that the civil conspiracy claim made available to plaintiffs under § 1985 could not be posited on a theory of vicarious liability. We agree with the latter proposition of law relied on by the trial court, and we also affirm its order on another ground.

#### A.

#### 42 U.S.C. § 1985

■ In reviewing the action of a trial court in dismissing a complaint for failure to state a claim, an appellate court is in the same position as the trial judge. *McDonald v. Lakewood Country Club,* 170 Colo. 355, 461 P.2d 437 (1969). The court must consider only matters stated within the four corners of the pleading. *Gayton v. Department of Highways,* 149 Colo. 72, 367 P.2d 899 (1962); *Dillinger v. North Sterling Irrigation District,* 135 Colo. 100, 308 P.2d 608 (1957).

■ A complaint under § 1985(3)[12] must allege sufficient facts to show:

"that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person of [sic] property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'" *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979), quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

The trial court found that, apart from the allegations which supported the plaintiffs' § 1983 action against the defendant police officers, the existence of a conspiracy

---

**12.** Title 42 U.S.C. § 1985(3) provides:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

among the officers, defendant Dill, and through them the defendant municipality, was nothing more than an assertion of *respondeat superior* liability.

> "[M]unicipal officers cannot be held vicariously liable for the constitutional misdeeds of their subordinates. Liability [for § 1985 violations] can only be imposed on these officers if they participated in the wrongful acts, or knew or should have known that the wrongful acts were taking place and acquiesced therein." *Preston v. City of York*, 452 F.Supp. 52, 54 (M.D. Pa. 1978).

*Fisher v. Volz*, 496 F.2d 333 (3d Cir. 1974). Beyond its facial assertion of the fact of a "conspiracy," the plaintiffs' amended complaint is devoid of any factual allegations which, taken to be true, would support the inference that an agreement existed among all the defendants to deprive the decedent of his rights. *See Taylor v. Mitzel*, 82 Cal. App.3d 665, 147 Cal.Rptr. 323 (1978); *Preston v. City of York, supra; Burnett v. Short*, 441 F.2d 405 (5th Cir. 1971).

■ Further, the complaint was deficient in another fundamental respect. In *Griffin v. Breckenridge, supra*, the United States Supreme Court found that Congress intended to prevent § 1985(3) from applying to "all tortious conspiratorial interferences with the rights of others," and thereby did not intend to create a general federal law of tort. *Id.*, 403 U.S. at 102, 91 S.Ct. at 1798. As a consequence, a complaint alleging purposeful intent to discriminate must be founded upon "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* In the present case no such allegation was made. The overwhelming weight of authority holds that a failure to allege a defendant's invidious discriminatory animus is a failure to state a claim under § 1985(3). *Briley v. State of California*, 564 F.2d 849 (9th Cir. 1977); *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977); *Kermit Construction Corp. v. Banco Credito*, 547 F.2d 1 (1st Cir. 1976); *Hazo v. Geltz*, 537 F.2d 747 (3d Cir. 1976); *McNally v. Pulitzer Publishing Co.*, 532 F.2d 69 (8th Cir. 1976).

We affirm the trial court's order dismissing the plaintiffs' cause of action brought under 42 U.S.C. § 1985.

### B.

### *Conspiracy Under § 1983*

The plaintiffs did not specifically allege a civil conspiracy claim pursuant to § 1983, but we address this issue in keeping with our overall review of the adequacy of the complaint.

■ Discriminatory purpose is not essential to the statement of a conspiracy claim under § 1983. *Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962). *See Monroe v. Pape, supra*, n. 8. The elements of such a claim are as follows: (1) that the defendants conspired together, (2) that defendants acted under color of state law, (3) that defendants deprived plaintiffs of a federal right, and (4) that overt acts were done pursuant to the conspiracy which caused damage to the plaintiffs. *Hoffman v. Halden*, 268 F.2d 280 (9th Cir. 1959), *overruled on another issue, Cohen v. Norris, supra*.

■■ In order for a complaint to allege a conspiracy under § 1983, the overt act must be causally linked to the defendants' agreement to deprive the plaintiffs of a federal right under color of state law. The complaint must

> "set forth with certainty facts showing particularly what defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff." *Martin Hodas v. Lindsay*, 431 F.Supp. 637, 643–44 (S.D.N.Y. 1977); *Hoffman v. Halden, supra*, at 295.

■ In the present complaint, no facts have been alleged to support the municipality's liability for § 1983 civil conspiracy. *Monell v. New York City Dept. of Social Services, supra*, n. 8. On the other hand, the common participation of the defendant police officers, O'Dell, Graham, and Neil, in the overt act of the conspiracy—the shoot-

ing of Arthur Espinoza—is asserted in a clear and striking manner.[13] The close question presented in the form of the present complaint is whether "specific facts" have been alleged to support a § 1983 conspiracy claim against the defendant Dill. *See Sanchez v. Marquez, supra; Salazar v. Dowd, supra.*

The only allegation linking Dill to any role within the conspiracy, to the conspiracy's framework in relation to its overt act, or to the overt act itself is the conclusory assertion that he "conspired" with the defendant police officers. This says something, but not enough.

On remand, the trial court should allow the plaintiffs to amend their complaint to dispel any confusion about the statutory basis of their civil conspiracy claim. We note, however, that the plaintiffs would have to plead more than their present "[g]eneral allegations of a conspiracy which are unsupported by facts" [*Sanchez v. Marquez, supra,* at 364] in order to join Dill and the City and County of Denver as defendants in a § 1983 claim for civil conspiracy.

## IV.

### Conclusion

We reverse the trial court's ruling dismissing the plaintiffs' action brought under 42 U.S.C. § 1983 and remand this case to the trial court with instructions that it reinstate the claims brought on behalf of Arthur Espinoza by his personal representative and by Arthur Espinoza's children, who assert that they have been illegally deprived of their constitutional liberty interest in a continuing family relationship.

We affirm the trial court's order dismissing the plaintiffs' claim based on 42 U.S.C. § 1985.

The court should allow amendment of the plaintiffs' complaint to allege a claim for relief for civil conspiracy under 42 U.S.C. § 1983; and if plaintiffs have grounds to believe that their constitutional deprivation resulted from formal or informal policies adopted by means of the municipality's official decision-making channels, they may include the City and County of Denver as a party defendant.

HODGES, C. J., and ERICKSON, J., specially concur in the result.

ERICKSON, Justice, specially concurring in the result:

*Jones v. Hildebrant,* 191 Colo. 1, 550 P.2d 339 (1976), was the subject of review by the Supreme Court of the United States at least to the extent that an opinion was issued dismissing certiorari as being improvidently granted. Justice White, joined by Justices Brennan and Marshall, dissented from the dismissal of certiorari. *Jones v. Hildebrant,* 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977). *Maryland v. Baltimore Radio Show,* 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950), stands as precedent for the proposition that the denial of certiorari review only signifies that the case before the Supreme Court of the United States was not properly postured for review. The opinion authored by Justice Rovira overrules *Jones v. Hildebrant, supra,* and suggests that Colorado courts may grant broad relief under an omnibus constitutional tort claim which finds its genesis in the Civil Rights Act of 1871 and 42 U.S.C. § 1983.

The suggested remedies included in Justice Rovira's opinion are not necessary to reach the result in this case. This Court should not address or seek to resolve issues which are not properly before us and which do not constitute an actual case or controversy. It is not our province to give legal advice.

---

**13.** The overt act for the conspiracy is contained in the plaintiffs' statement of their first § 1983 claim for relief and is incorporated by reference in their second conspiracy claim for relief:

"That on or about July 30, 1977, at or near 31st and Curtis Streets, in Curtis Park, located in Denver, Colorado, the Defendants, O'Dell, Graham, and Neil, wrongfully shot and killed the decedent, Arthur Espinoza, while he was lying on the ground unarmed, and that such actions were undertaken willfully, maliciously, wantonly, recklessly, and with a willful and wanton disregard for the rights and feelings of the decedent, Arthur Espinoza, and his heirs at law, the Plaintiffs herein."

Accordingly, I concur in the result. The trial court erred in ruling that a state wrongful death action was the plaintiff's sole method of recovery in Colorado. I also agree that the trial court properly dismissed the claims against the Chief of Police, Arthur Dill, and against the City and County of Denver. Dismissal of the claims predicated on 43 U.S.C. § 1985 was also proper under the record which is before us.

Chief Justice HODGES joins me in this special concurrence.