The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 28, 2026

**2026 COA 42**

**No. 25CA0987, *Brooks v. City & County of Denver* —
Constitutional Law — Colorado Constitution — Due Process;
Remedies — Civil Action for Deprivation of Rights — Peace
Officers — Jail Suicide**

A division of the court of appeals considers what legal

standard applies when a plaintiff seeks damages under section 13-

21-131, C.R.S. 2025, for a violation of Colorado's due process

clause based on a jail suicide. After examining analogous federal

law, the division holds that a plaintiff asserting such a claim must

show that the jailer or their supervisor acted with deliberate

indifference. Applying that standard, the division concludes that

plaintiff failed to allege sufficient facts demonstrating that any

defendant acted with deliberate indifference.

The division also addresses, for the first time in a published

Colorado opinion, the scope of a jailer's duty to protect a detainee

from self-harm while in custody. Based on established tort

principles under Colorado law and decisions in other jurisdictions, the division concludes that a jailer has a duty to protect a detainee from self-inflicted injury or death only if the risk of such harm is reasonably foreseeable. Because plaintiff's allegations didn't satisfy this standard, the division affirms the dismissal of her wrongful death claim.

The division also addresses and rejects plaintiff's other contentions and therefore affirms the district court's dismissal of the amended complaint.

Court of Appeals No. 25CA0987
City and County of Denver District Court No. 24CV32194
Honorable Jill D. Dorancy, Judge

Shia Brooks, for herself and as Common law Spouse and heir to the Estate of Gavin Tweed,

Plaintiff-Appellant,

v.

City and County of Denver, Denver Health and Hospital Authority, Paul Pazen, in his individual and official capacities, Elias Diggins, in his individual and official capacities, and Donna Lynne, in her individual and official capacities,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

Announced May 28, 2026

---

VANGUARD JUSTICE LLC, Elisabeth L. Owen, Denver, Colorado; Levin Sitcoff PC, Bradley A. Levin, Gideon S. Irving, Denver, Colorado, for Plaintiff-Appellant

Miko Brown, City Attorney, David Murphy, Assistant City Attorney, Andrew Oh-Willeke, Assistant City Attorney, Denver, Colorado, for Defendants-Appellees City and County of Denver, Paul Pazen, and Elias Diggins

Hershey Decker Drake, P.L.L.C., C. Todd Drake, Lone Tree, Colorado, for Defendants-Appellees Denver Health and Hospital Authority and Donna Lynne

¶ 1     After her husband died by suicide while detained in a Denver jail, plaintiff, Shia Brooks, brought claims for wrongful death and violations of the Colorado Constitution on behalf of herself and her husband's estate against defendants, several Denver entities and their employees.  In three of her claims, Brooks alleged violations of Colorado's due process clause, Colo. Const. art. II, § 25, and sought damages against multiple peace officers under section 13-21-131, C.R.S. 2025.  The district court dismissed each of Brooks' claims for failure to state a claim under C.R.C.P. 12(b)(5).

¶ 2     No published Colorado case has addressed the legal standard that applies when a plaintiff seeks damages under section 13-21-131 for a violation of Colorado's due process clause based on a jail suicide.  After examining analogous federal law, we hold that a plaintiff asserting such a claim must show that the jailer or their supervisor acted with deliberate indifference.  Applying that standard, we conclude that Brooks failed to allege sufficient facts demonstrating that any defendant acted with deliberate indifference.

¶ 3     We also address for the first time in a published Colorado opinion the scope of a jailer's duty to protect a detainee from self-

1

harm while in custody. Based on established tort principles under Colorado law and decisions in other jurisdictions, we conclude that a jailer has a duty to protect a detainee from self-inflicted injury or death only if the risk of such harm is reasonably foreseeable. Because Brooks' allegations didn't satisfy this standard, we discern no basis to reverse the dismissal of Brooks' wrongful death claim.

¶ 4 We also disagree with Brooks' other contentions, so we affirm the district court's dismissal of the amended complaint.

## I. Background and Procedural History

¶ 5 We take the following facts from the allegations in Brooks' amended complaint.

¶ 6 In July 2022, four Denver police officers entered the community where Brooks lived with her common law husband, Gavin Tweed. The officers told Tweed he was under arrest due to an outstanding warrant issued in Adams County, Colorado. After Tweed submitted to arrest without incident, the officers left him in a patrol car for approximately three hours before transporting him to the downtown Denver detention center.

¶ 7 While at the detention center, one or more of the arresting officers "formed the belief" that Tweed had assaulted them. The

2

officers therefore instructed the intake officer, a Denver Sheriff's Department employee, to charge Tweed with multiple felonies stemming from the assault. Because the intake officer booked Tweed into the detention center on felony charges, jail staff assigned Tweed to a higher security classification than they would have if he had been booked on only the misdemeanor warrant charge.

¶ 8     Three deputy sheriffs then interviewed Tweed to determine where to house him within the detention center. They also conducted a medical and mental health assessment of Tweed but none ascertained his "substantial history of trauma, mistreatment and abuse by his mother, mental disorders," or "behavioral health needs." As a result, jail staff didn't assign Tweed to a mental health observation unit.

¶ 9     Three days after being arrested, Tweed hanged himself in his jail cell. He died after being transported to Denver Health Medical Center, which the Denver Health and Hospital Authority operates.

¶ 10     Brooks sued the City and County of Denver (the City); Denver Chief of Police Paul Pazen; ten unnamed Denver Police Department employees (John Does 1-10); Denver Sheriff Elias Diggins; fifteen

unnamed Denver Sheriff's Department employees (John Does 11-25); the Denver Health and Hospital Authority; the hospital authority's CEO, Donna Lynne; and five unnamed hospital authority employees (John Does 26-30).[1]

¶ 11 In her amended complaint, Brooks brought four state constitutional claims (one unreasonable seizure claim and three due process claims) on behalf of Tweed's estate under Colorado's survival statute, section 13-20-101, C.R.S. 2025. Brooks also asserted one wrongful death claim under section 13-21-202, C.R.S. 2025.

¶ 12 Notably, Brooks didn't plead any federal constitutional claims under 42 U.S.C. § 1983.

¶ 13 For her relief, Brooks requested monetary damages from the defendants who were certified peace officers, citing section 13-21-131, which was adopted as part of the Enhance Law Enforcement Integrity Act (ELEIA). Ch. 110, sec. 3, § 13-21-131, 2020 Colo. Sess. Laws 452-53. She also requested that the district court

---

[1] In this opinion, we refer to the City, Chief Pazen, and Sheriff Diggins collectively as "the Denver defendants." We refer to the hospital authority and Lynne collectively as "the hospital defendants."

4

recognize a damages remedy for the state constitutional violations committed by the City, the hospital defendants, and the remaining Doe defendants who weren't peace officers.  In making this request, Brooks said she intended to ask the supreme court to reverse or distinguish its decision in *Board of County Commissioners v. Sundheim*, 926 P.2d 545 (Colo. 1996), in which the court declined to recognize an implied damages remedy for violations of the Colorado Constitution.  Finally, Brooks requested prospective declaratory and injunctive relief within one of her due process claims, asking the court to "remedy the constitutional violations" she had identified.

¶ 14    The Denver defendants and the hospital defendants moved to dismiss Brooks' amended complaint for failure to state a claim under Rule 12(b)(5).[2]  Both sets of defendants also challenged Brooks' authority to bring the case, arguing she lacked standing and capacity to bring claims on behalf of Tweed's estate.  The Denver defendants added that Brooks had inadequately alleged that she was Tweed's common law spouse.

---

[2] Because Brooks never served the Doe defendants, they never appeared or otherwise participated in the litigation.

¶ 15　The district court granted the defendants' motions and dismissed the amended complaint "in its entirety." The court first determined that Brooks "would have standing and capacity" to maintain the lawsuit if Tweed's estate were named as a plaintiff, but it declined to permit an amendment due to the amended complaint's other deficiencies. Next, the court rejected Brooks' request that it recognize an implied damages remedy for violations of the Colorado Constitution, explaining that her request contravened *Sundheim* and that § 1983 provided her an adequate remedy. The court didn't mention section 13-21-131 or Brooks' request for equitable relief. Last, the court concluded that Brooks failed to state a claim for wrongful death because her amended complaint relied on "conclusory allegations without factual support."

¶ 16　A few months after the district court dismissed Brooks' action, the Denver Probate Court appointed Brooks as special administrator of Tweed's estate, giving her the power of the personal representative for the limited purpose of prosecuting this case. *In re Tweed*, (City & Cnty. of Denv. Prob. Ct. No. 25PR30116, Sep. 20, 2025) (unpublished order); *see* §§ 15-12-614, -617, C.R.S. 2025.

Although not in our record, we take judicial notice of the probate court's appointment order. *See* CRE 201(b), (c), (f); *Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 ("[W]e can 'take judicial notice of the contents of court records in a related proceeding.'" (quoting *People v. Sa'ra*, 117 P.3d 51, 56 (Colo. App. 2004))).

## II.    Discussion

¶ 17    Brooks contends that the district court erred by dismissing her amended complaint, arguing that she stated plausible claims under both the survival statute and the wrongful death statute. She also renews her request that we recognize a damages remedy against government actors and their employers when they violate a detainee's state constitutional rights.[3]

### A.    Standard of Review and Legal Framework

¶ 18    We review an order granting a defendant's Rule 12(b)(5) motion to dismiss de novo. *Woodall v. Godfrey*, 2024 COA 42, ¶ 6.

---

[3] In evaluating Brooks' contentions, we don't consider her or the hospital defendants' citations to unpublished decisions by divisions of this court. This court's policy prohibits citations to opinions that aren't selected for official publication, with exceptions not applicable here. *See* Colo. Jud. Branch, *Court of Appeals Policies, Policy Concerning Citation of Opinions Not Selected for Official Publication* (2026), https://perma.cc/5AZZ-KSWL.

In doing so, we apply the same standards as the district court. *Id.* To survive a motion to dismiss, a plaintiff's complaint must state "a plausible claim for relief." *Warne v. Hall*, 2016 CO 50, ¶ 9 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint's factual allegations must be "enough to raise a right to relief 'above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

¶ 19 In evaluating whether a complaint meets this standard, we accept the complaint's factual allegations as true "and view them in the light most favorable to the plaintiff." *Woodall*, ¶ 8. But we aren't required to accept as true legal conclusions disguised as factual allegations or bare, conclusory assertions unsupported by factual allegations. *Id.*

¶ 20 We similarly review questions of statutory interpretation de novo. *Trinidad Area Health Ass'n v. Trinidad Ambulance Dist.*, 2024 COA 113, ¶ 23. When interpreting a statute, our primary task is to ascertain and give effective to the legislature's intent — the "polestar" of statutory construction. *St. Vrain Valley Sch. Dist. RE-1J v. A.R.L.*, 2014 CO 33, ¶ 10. "We look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all its

parts, and we apply words and phrases according to their plain and ordinary meaning." *Trinidad Area Health Ass'n,* ¶ 23.

¶ 21    A plaintiff may seek relief for the alleged wrongful death of another in two ways. *Espinoza v. O'Dell,* 633 P.2d 455, 462-63 (Colo. 1981). First, they may bring a survival action on behalf of the decedent's estate under the survival statute, section 13-20-101. *Espinoza,* 633 P.2d at 462-63. Second, they may bring a wrongful death action under the wrongful death statute, section 13-21-202. *Espinoza,* 633 P.2d at 462-63.

¶ 22    Under the survival statute, subject to certain limitations, "[a]ll causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person in favor of or against whom such action has accrued." § 13-20-101(1). Only the estate's personal representative may bring such an action. *See* § 13-20-101(2) ("Any action under this section may be brought . . . by or against the personal representative of the deceased."); *Espinoza,* 633 P.2d at 466 ("The personal representative of the decedent's estate, by necessity, stands in the decedent's shoes in a state survival action."); *A.B. v. City of Woodland Park,* 174 F. Supp. 3d 1238, 1246 (D. Colo. 2016).

¶ 23    The wrongful death statute, by contrast, authorizes certain of the decedent's statutorily enumerated heirs to bring a claim for damages against the person whose "wrongful act, neglect, or default" caused the decedent's death. § 13-21-202; *see Espinoza*, 633 P.2d at 463.

¶ 24    As Brooks recognizes, the supreme court has declined to recognize an implied state constitutional cause of action for damages when other adequate remedies exist. *Sundheim*, 926 P.2d at 553. But in ELEIA, the General Assembly authorized a private cause of action for damages and equitable relief against a peace officer who deprives an individual of certain rights secured by the Colorado Constitution. *Woodall*, ¶ 11. Specifically, section 13-21-131(1) provides that

> [a] peace officer, as defined in section 24-31-901(3), [C.R.S. 2025,] who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution, is liable to the injured party

for legal or equitable relief or any other appropriate relief.[4]

Statutory immunities and limitations on liability, damages, and attorney fees don't apply to claims brought under this statute. § 13-21-131(2)(a).

## B.    The Estate's Survival Claims

¶ 25    We first address Brooks' contention that the district court erred by dismissing the four survival claims seeking damages against Chief Pazen, Sheriff Diggins, and twenty-three Doe defendants who are each peace officers.  In support, she argues that the district court overlooked section 13-21-131.  She also contends that the court erred by dismissing her equitable claim seeking prospective declaratory and injunctive relief.

### 1.    Standing

¶ 26    Before turning to Brooks' contentions, we address two challenges to the district court's subject matter jurisdiction.  First,

---

4 Under section 24-31-901(3), C.R.S. 2025, a peace officer includes "any person employed by a political subdivision of the state required to be certified by the P.O.S.T. board," "a Colorado state patrol officer," and "any noncertified deputy sheriff."  Certification by the P.O.S.T. board (the peace officers standards and training board) is required for police officers and sheriffs.  §§ 16-2.5-100.3, -102, C.R.S. 2025.

the defendants assert that we should affirm the dismissal of Brooks' survival claims because Brooks isn't the personal representative of the estate, depriving her of standing to bring claims on its behalf. Second, the Denver defendants argue that Brooks lacks standing to pursue prospective equitable relief on the estate's behalf. We reject the defendants' first argument but agree with the second.

¶ 27　　At the outset, the defendants' first contention is factually incorrect. Pursuant to section 15-12-617, the Denver Probate Court appointed Brooks as special administrator of Tweed's estate on September 20, 2025, more than a month before the defendants filed their answer briefs in this appeal. The appointment order gave Brooks the "power of a general personal representative," § 15-12-617, for the limited purpose of prosecuting this civil action. While Brooks' appointment came after she initiated this litigation, the late timing of the appointment order is immaterial. *See* § 15-12-701, C.R.S. 2025 ("The powers of a personal representative relate back in time to give acts by the person appointed that are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter.").

¶ 28    Moreover, the defendants' first contention conflates Brooks' capacity to sue with her standing.  To have standing, a plaintiff must establish (1) an injury in fact (2) to a legally protected interest. *Wimberly v. Ettenberg*, 570 P.2d 535, 539 (Colo. 1977).  If a party lacks standing, a court doesn't have subject matter jurisdiction because no case or controversy exists for the exercise of judicial authority.  *SMLL, L.L.C. v. Peak Nat'l Bank*, 111 P.3d 563, 566 (Colo. App. 2005).  Subject matter jurisdiction concerns "a court's power to resolve a dispute in which it renders judgment" and is "generally only dependent on the nature of the claim and the relief sought."  *Ashton Props., Ltd. v. Overton*, 107 P.3d 1014, 1017 (Colo. App. 2004) (quoting *Trans Shuttle, Inc. v. Pub. Utils. Comm'n*, 58 P.3d 47, 50 (Colo. 2002)).

¶ 29    Capacity, on the other hand, concerns "the personal qualifications of a party to litigate a case."  *Id.* at 1016; *see* C.R.C.P. 17.  Unlike subject matter jurisdiction, whether a party has capacity to sue generally doesn't turn on the particular claim or defense being asserted.  *Ashton*, 107 P.3d at 1016.  If a party lacks capacity, a judicially resolvable case or controversy may exist, but the party isn't qualified to assert claims in the case.  *SMLL*, 111

13

P.3d at 566.  "[A] party's capacity to sue or lack thereof does not affect the jurisdiction of the court."  *Ashton*, 107 P.3d at 1017.

¶ 30    For claims covered by the survival statute, only the personal representative of a decedent's estate may seek relief on the estate's behalf.  *See* § 13-20-101(2); *Espinoza*, 633 P.2d at 466.  This limitation concerns "the personal qualifications of a party to litigate a case" because it doesn't depend on the underlying claims or defenses.  *Ashton*, 107 P.3d at 1016; *accord Hill v. Martinez*, 87 F. Supp. 2d 1115, 1122 (D. Colo. 2000) (explaining that whether an individual can sue on an estate's behalf "is best characterized as a question of capacity," not standing).  Thus, any dispute over Brooks' status as personal representative goes to her capacity to maintain this lawsuit, not her standing.  And because Brooks has been duly appointed as personal representative of Tweed's estate for the purpose of prosecuting this case, no question exists that she

has the proper capacity to proceed. We therefore reject the defendants' first standing contention.[5]

¶ 31     We reach a different conclusion, however, regarding the Denver defendants' second contention challenging Brooks' standing. This challenge is narrow. The Denver defendants argue only that Brooks lacks standing to seek prospective declaratory and injunctive relief under her second claim, in which she alleged that certain defendants failed to implement effective suicide prevention policies. According to the Denver defendants, the estate won't benefit from a court order requiring them to implement more effective policies.

¶ 32     To establish standing for injunctive relief against the government, the plaintiff must satisfy the "imminent injury standard." *State Bd. of Chiropractic Exam'rs v. Stjernholm*, 935 P.2d 959, 971 (Colo. 1997) (A court shouldn't "grant the equitable

---

[5] We also reject the Denver defendants' related argument that Tweed's estate itself needed to be named as a party. "A personal representative's powers include the authority to bring suit on behalf of the estate's beneficiaries." *Steiger v. Burroughs*, 878 P.2d 131, 135 (Colo. App. 1994); *see* § 13-20-101(2), C.R.S. 2025. And in any event, Brooks' amended complaint explicitly said that the four survival claims were brought by "the Estate."

15

remedy of injunction against other branches of government in the absence of convincing proof of *threatened* and *impending* wrongful action." (citation omitted)). "Past exposure to illegal conduct, if unaccompanied by any continuing, present adverse effects, does not present a case or controversy regarding injunctive relief." *Id.* Similar standing requirements govern a plaintiff's request for prospective declaratory relief. *See Bd. of Cnty. Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1053 (Colo. 1992).

¶ 33 The Tenth Circuit's decision in *Estate of Schultz v. Brown*, 846 F. App'x 689 (10th Cir. 2021), illustrates these principles in the context of claims for injunctive and declaratory relief brought by a decedent's estate. In *Brown*, an applicant for Medicaid benefits died shortly after she appealed Oklahoma's denial of her request for benefits. *Id.* at 691. Her estate later sued in federal court for prospective injunctive and declaratory relief, seeking a court order requiring the state's Medicaid agencies to implement an impartial hearing system. *Id.* The Tenth Circuit concluded the estate lacked standing because it couldn't allege "the continuing or impending harm required to pursue prospective relief." *Id.* at 693. After the decedent died, the court explained, she "no longer experience[d]

16

whatever unfairness exists in Oklahoma's Medicaid appeals process," and the estate itself alleged no independent injury. *Id.*

¶ 34    Here, Brooks' second claim requested declaratory and injunctive relief to remedy certain defendants' alleged failure to "research, draft, implement, and enforce effective suicide prevention policies" for arrestees and detainees. But like the estate in *Brown,* Brooks never alleged any threatened or impending wrongful action against herself or Tweed's estate. And while inadequate suicide prevention policies could potentially violate *another* detainee's constitutional rights, Brooks can't seek judicial relief on others' behalf. *See Espinoza,* 633 P.2d at 463 ("Ordinarily, one cannot sue for relief over the deprivation of another's civil rights.").

¶ 35    We recognize that the General Assembly has conferred on every estate's personal representative "the same standing to sue . . . [that] the decedent had immediately prior to death." § 15-12-703(4), C.R.S. 2025. But as the supreme court has made clear, the legislature's "grant of the right to seek judicial review is not in itself dispositive of the standing inquiry." *Maurer v. Young Life,* 779 P.2d 1317, 1324 (Colo. 1989). The Colorado Constitution also plays a role. In particular, *Wimberly*'s injury-in-fact prong is a

"constitutional requirement" that permits courts to exercise subject matter jurisdiction only if "an actual controversy exists" as shown by a "real injury." *Maurer*, 779 P.2d at 1323 (citation omitted). In this case, Brooks' allegations supporting her claim for prospective equitable relief reveal no constitutionally sufficient injury.[6]

¶ 36    Accordingly, although we reject the defendants' argument that Brooks lacked standing to bring *any* survival claims, we agree that she and the estate lacked standing to pursue the prospective declaratory and injunctive relief portion of her second claim.

¶ 37    With Brooks' survival claims now appropriately narrowed to only damages claims, we turn to whether the district court erred by dismissing them for failure to state a claim under Rule 12(b)(5).

---

[6] In her reply brief, Brooks leans on the "capable of repetition yet evading review" exception to mootness, arguing that a detainee subjected to a jail's inadequate suicide prevention policies won't know about the policies' deficiencies until it's too late. Perhaps so, but Tweed died before this litigation began, rendering the mootness doctrine inapplicable. *See Levitt v. Calvary Temple*, 33 P.3d 1227, 1228 (Colo. App. 2001) ("[A] controversy can become moot *during* the course of litigation." (emphasis added)); *see also Est. of Schultz v. Brown*, 846 F. App'x 689, 693 (10th Cir. 2021) (explaining standing, not mootness, was the proper framework to analyze subject matter jurisdiction because the decedent died before the estate commenced litigation).

## 2. Unreasonable Seizure Claim

¶ 38    Brooks contends that the district court erred by dismissing her unreasonable seizure claim against the arresting officers and the intake officer. We disagree.

### a. Additional Applicable Law

¶ 39    The Colorado Constitution protects persons against "unreasonable searches and seizures." Colo. Const. art. II, § 7. An officer seizes a person when the officer, "by means of physical force or show of authority," restrains the person's liberty. *Woodall,* ¶ 12 (quoting *Outlaw v. People,* 17 P.3d 150, 154 (Colo. 2001)).

¶ 40    A formal seizure or arrest must be supported by probable cause. *People v. King,* 16 P.3d 807, 812 (Colo. 2001). "[P]robable cause to arrest exists when, at the time of arrest, the objective circumstances available to a reasonably cautious officer justify the belief that (1) a crime has been or is being committed (2) by the person arrested." *Id.* at 809. An outstanding warrant "provides a prima facie showing of probable cause," even if another jurisdiction issued the warrant. *People v. Gouker,* 665 P.2d 113, 116 (Colo. 1983).

19

## b.     Analysis

¶ 41    In the amended complaint, Brooks alleged that the arresting officers "unreasonably seized [Tweed] when they arrested him for an alleged out-of-jurisdiction misdemeanor warrant."  According to Brooks, the arresting officers "furthered their unreasonable seizure when they directed [the intake officer] to 'charge'" Tweed with assault.  Brooks added that the intake officer "unreasonably seized [Tweed] when they booked [Tweed] into the jail" based on the out-of-jurisdiction warrant and assault charges.

¶ 42    Noticeably absent from Brooks' amended complaint, however, is any allegation of *how* the arresting officers and intake officer acted unreasonably when seizing Tweed.  *See Warne*, ¶ 27 (explaining that allegations that conditions were "unlawful, arbitrary, or unreasonable," without reference to any factual allegation specifying how or why they should be considered unreasonable, were bare and conclusory).  Indeed, one of the few detailed allegations in the amended complaint actually cuts against Brooks by painting a picture of a relatively unremarkable arrest, stating that Tweed "willingly allowed himself" to be handcuffed by

officers who then placed him in the backseat of a patrol car "without incident."

¶ 43    To the extent Brooks' allegations were meant to challenge the existence of probable cause to arrest Tweed, we conclude the allegations still fall short.  While the amended complaint alleged that Brooks couldn't locate any public record of a case with an outstanding warrant for Tweed's arrest, she doesn't assert that no warrant existed or that the officers otherwise lacked probable cause for the arrest.[7]

¶ 44    Similarly, Brooks doesn't allege how the officer or officers who "formed the belief" that Tweed had assaulted them did so

---

[7] We take judicial notice of Tweed's misdemeanor criminal case in Adams County Court, which is referenced in the amended complaint and includes a warrant issued on March 23, 2022 — a few months before the events giving rise to this case.  *See People v. Sena*, 2016 COA 161, ¶ 27.  The warrant provided "a prima facie showing of probable cause" for Tweed's arrest.  *People v. Gouker*, 665 P.2d 113, 116 (Colo. 1983).  Although the case containing the warrant was sealed after Tweed's death, we may still reference the warrant's existence to the extent Brooks challenges the propriety of the officers' actions in arresting and detaining Tweed.  *See* § 24-72-703(2)(a)(III), C.R.S. 2025 ("A record sealed pursuant to this article 72 and section 13-3-117[, C.R.S. 2025,] may be used by a . . . court . . . for any lawful purpose relating to the investigation or prosecution of any case . . . .").

unreasonably, or that some objective circumstance contradicted the officers' belief. *See King*, 16 P.3d at 809.

¶ 45   Under these circumstances, we conclude that Brooks' amended complaint failed to state a plausible claim for a violation of Tweed's right to be free from unreasonable seizures.

### 3.   Due Process Claims

¶ 46   Brooks also contends that the district court erred by dismissing her three survival claims alleging that certain defendants violated Tweed's right to due process under the Colorado Constitution. We address each claim in turn and conclude that none stated a plausible due process violation.

### a.   Additional Applicable Law

¶ 47   Under the Colorado Constitution, "[n]o person shall be deprived of life, liberty or property, without due process of law." Colo. Const. art. II, § 25. No published Colorado case has addressed how Colorado's due process clause applies to a claim involving a jail suicide. Because neither party argues that Colorado's due process guarantee is more protective than the federal standard, we will read the Federal and Colorado Due Process Clauses coterminously for purposes of this opinion and

consult federal cases for their persuasive force. *See Sanders v. People*, 2024 CO 33, ¶ 28; *Vega v. People*, 893 P.2d 107, 110 n.5 (Colo. 1995).

¶ 48     This court also hasn't had occasion to address a state due process claim brought under section 13-21-131 arising from a jail suicide. But again, we aren't without guidance. Because section 13-21-131 is similar to 42 U.S.C. § 1983, we may look to § 1983 cases as persuasive authority. *See Woodall*, ¶ 13.

¶ 49     Federal courts treat a jail suicide claim as a claim that a jailer violated a detainee's right to due process by providing inadequate medical care. *See Barrie v. Grand County*, 119 F.3d 862, 866-67 (10th Cir. 1997) (collecting cases). A jailer violates a pretrial detainee's due process right to adequate medical care when they are deliberately indifferent to the detainee's serious medical needs. *Id.* at 867; *accord Est. of Burgaz v. Bd. of Cnty. Comm'rs*, 30 F.4th 1181, 1186 (10th Cir. 2022).

¶ 50     The deliberate indifference test includes objective and subjective components. *Burgaz*, 30 F.4th at 1186. The objective component requires that the plaintiff establish that the deprivation

was sufficiently serious to warrant intervention or treatment. *Id.* Death by suicide satisfies this objective requirement. *Id.*

¶ 51     The subjective component focuses on whether the jailer knew the detainee "faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it." *Id.* (quoting *Redmond v. Crowther*, 882 F.3d 927, 939-40 (10th Cir. 2018)). A jailer's failure to alleviate a serious risk of which they are unaware doesn't rise to a constitutional violation. *Id.*; *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (for purposes of the Eighth Amendment's ban on cruel and unusual punishments, deliberate indifference requires that the prison official "knows of and disregards an excessive risk to inmate health or safety"); *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) (explaining that the deliberate indifference standard that protects pretrial detainees "springs from the Fourteenth Amendment's Due Process Clause" and that courts apply an identical analysis in Eighth Amendment cases). But a fact finder may infer that the jailer had actual knowledge of a substantial risk of harm based solely on circumstantial evidence. *Burgaz*, 30 F.4th at 1186. The

obviousness of a risk, for example, may allow the fact finder to infer that the jailer in fact knew of the risk but chose to disregard it. *Id.*

¶ 52 Brooks' amended complaint also asserted two supervisory liability claims under Colorado's due process clause and section 13-21-131. Under analogous § 1983 precedent, a plaintiff may impose supervisory liability on a defendant supervisor who creates, promulgates, or implements a policy that deprives the plaintiff of any right secured by the Constitution. *Brown v. Montoya*, 662 F.3d 1152, 1163-64 (10th Cir. 2011); *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

¶ 53 But supervisors aren't vicariously liable under § 1983 for their employees' acts, rendering the term "supervisory liability" somewhat of a misnomer. *Iqbal*, 556 U.S. at 676-77 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Given this, a plaintiff must establish an "affirmative link" between the supervisor and the violation. *Dodds*, 614 F.3d at 1195 (quoting *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006)). To do so, the plaintiff must show (1) personal involvement by the supervisor; (2) a sufficient causal connection; and (3) a culpable state of mind. *Id.*; *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767

(10th Cir. 2013). As to the final element, federal courts have required plaintiffs bringing substantive due process claims to show, at a minimum, that the supervisor acted with deliberate indifference. *See Schneider*, 717 F.3d at 769.

¶ 54 For two reasons, we agree that the centerpiece of this federal framework — the deliberate indifference standard — supplies the appropriate benchmark for assessing a plaintiff's state due process claim that seeks damages under section 13-21-131 arising from a jail suicide.

¶ 55 First, Colorado courts have already adopted the federal deliberate indifference standard when analyzing analogous state constitutional claims. *See Winston v. Polis*, 2021 COA 90, ¶¶ 14-16 (adopting the federal deliberate indifference standard for prison inmate claims alleging cruel and unusual punishment under Colorado Constitution article II, section 20, in part because section 20 is identical to the Eighth Amendment). Given the overlap between the claims in *Winston* and Brooks' state due process claims, we perceive no reason to deviate from the established deliberate indifference standard. *Cf. Burke*, 935 F.3d at 991.

¶ 56 Second, as discussed, the Colorado due process clause is coterminous with its federal counterpart for purposes of our analysis. *Sanders*, ¶ 28. What's more, section 13-21-131 is similar to § 1983. *Woodall,* ¶ 13. With multiple parallel federal provisions underpinning our analysis, we deem it appropriate in this context to maintain uniformity between Colorado and federal law. Maintaining this consistency has the advantage of reducing forum shopping. *Warne*, ¶ 17. In addition, no party has identified, and we don't discern, any compelling justification unique to the history or practice of Colorado for departing from the persuasive guidance offered by this body of analogous federal law. *See id.* at ¶ 12; *cf. Curious Theater Co. v. Colo. Dep't of Pub. Health & Env't*, 220 P.3d 544, 551 (Colo. 2009) (merely disagreeing with the United States Supreme Court's interpretation of the same or similar constitutional provisions, without more, "risks undermining confidence in the judicial process and the objective interpretation of constitutional and legislative enactments").

¶ 57 Accordingly, we hold that a plaintiff seeking damages under section 13-21-131 for a violation of Colorado's due process clause, Colo. Const. art. II, § 25, based on a jail suicide must show that the

jailer or their supervisor acted with deliberate indifference. With these legal principles in mind, we turn to Brooks' state due process claims.

### b. Failure to Respond Claim

¶ 58 In her first claim, Brooks alleged that all thirty Doe defendants "failed to reasonably ascertain facts that would have demonstrated that [Tweed] was at high risk for suicide while housed in [the detention center], and to respond reasonably to [that] high risk." To get there, Brooks described Tweed's traumatic history and alleged that "one or more school districts, [the Department of Human Services], one or more juvenile justice agencies, the juvenile court system, and at least one state contracted mental health treatment center" had documented Tweed's traumatic history.

¶ 59 But Brooks didn't allege that any *defendant* knew about Tweed's traumatic history or that he was suicidal at the time of his detention. *See Burgaz*, 30 F.4th at 1189 (deputy wasn't deliberately indifferent toward detainee who died by suicide because, even though he may have known about detainee's "history of mental illness, substance abuse, and a previous suicide attempt at the same jail," the complaint didn't allege that the deputy knew the

28

detainee was suicidal "at that time"). And without actual knowledge that Tweed was currently suicidal, the defendants couldn't have been deliberately indifferent by failing to ascertain Tweed's medical and mental health needs. *See Woodall*, ¶ 8.

¶ 60 Brooks also alleged that officers violated Tweed's due process right by using "aggressive tactics," "aggressively lock[ing Tweed] in a holding cell," and inadequately conducting rounds or otherwise monitoring Tweed. If the officers had known that Tweed was suicidal, we would agree that using aggressive tactics or inadequately monitoring him could, under some circumstances, show deliberate indifference toward his serious medical needs. But again, Brooks didn't allege that any defendant knew that Tweed might harm himself. *See Burgaz*, 30 F.4th at 1188.

¶ 61 Brooks also asserted that she stated a plausible claim that the arresting officers violated Tweed's right to due process by directing the intake officer to charge Tweed with multiple felonies based on Tweed's alleged assault, and that the intake officer similarly violated Tweed's right by complying with their request. Again, we disagree. As already discussed, Brooks didn't plausibly allege that the officers

improperly charged Tweed or that they arrested him without probable cause.

¶ 62 We also aren't persuaded that Brooks' allegation that officers assigned Tweed a higher classification level due to the trumped-up assault charges was enough to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Classification decisions fall within the correctional institution's discretion, and a particular classification doesn't implicate any liberty interest protected by due process. *Green v. Nadeau*, 70 P.3d 574, 577 (Colo. App. 2003); *see also Andretti v. Johnson*, 779 P.2d 382, 384 (Colo. 1989) ("It is well established that prisoners do not have a constitutional right to a particular classification level within a correctional system.").

¶ 63 Accordingly, we perceive no error in the district court's decision dismissing Brooks' failure to respond claim under Rule 12(b)(5).

c.    Supervisory Liability Claims

¶ 64 In her second claim, Brooks alleged that Chief Pazen and Sheriff Diggins failed to implement effective suicide prevention policies. And in her third claim, Brooks alleged that Pazen, Diggins,

and fifteen Doe defendants inadequately supervised their employees.[8]

¶ 65    Regarding specific policies, Brooks alleged that Chief Pazen was responsible for "enacting responsible, ethical, moral, [and] legal policies," and that the police department's policies fail to adequately account for its "extraordinary responsibility" to "keep people alive." While Brooks acknowledged in her amended complaint that the department's operations manual contains a policy directing officers to complete an "Arrestee Mental Health Status/Suicidal/Homicidal Tendency Report" if an officer suspects a detainee may be suicidal, she took issue with the absence of "procedures by which a [police] officer is to determine whether an arrestee is suicidal." She added that the manual doesn't address "scenarios in which a [police] officer should or must take an arrestee for medical or mental health treatment" before transporting them to the detention center.

---

[8] Brooks made similar allegations against the City, the hospital authority, and Lynne in her second and third claims. On appeal, however, Brooks doesn't challenge the district court's dismissal of her second and third claims as to those defendants. *See Armed Forces Bank, N.A. v. Hicks*, 2014 COA 74, ¶ 38 (arguments not pursued on appeal are deemed abandoned).

¶ 66    As to Sheriff Diggins, Brooks similarly alleged that he failed to develop effective suicide prevention policies for the detention center. According to Brooks, the sheriff department's inmate handbook doesn't (1) identify a "mental health screening" policy; (2) require sheriff's department staff to evaluate a detainee's mental health status during the classification process; (3) explain to detainees or jail staff how to identify whether someone is experiencing a mental health crisis; or (4) devote more than one paragraph to a suicide prevention policy.

¶ 67    We conclude none of these allegations plausibly alleged that Chief Pazen or Sheriff Diggins acted with deliberate indifference when implementing their respective agencies' suicide prevention policies. *See Schneider*, 717 F.3d at 769. Brooks never alleged that Pazen or Diggins *knew* that their agencies' suicide prevention policies presented an excessive risk to detainees' safety. *See Farmer*, 511 U.S. at 837. Nor did she allege that the risk from the allegedly deficient policies was so obvious that their knowledge could reasonably be inferred. *See Burgaz*, 30 F.4th at 1186. Without allegations demonstrating deliberate indifference, we

32

discern no error in the district court's dismissal of Brooks' second claim under Rule 12(b)(5).

¶ 68 We reach the same conclusion regarding Brooks' third claim in which she alleged that Chief Pazen, Sheriff Diggins, and fifteen Doe defendants inadequately supervised their respective employees. Her allegations in support of this claim were sparse. She alleged only that these "[s]upervision [d]efendants" (1) were responsible for ensuring that their employees "did their jobs in such a way as to protect the lives of people arrested and detained" in Denver; (2) "failed to reasonably discharge their supervisory duties over their employees"; and (3) caused Tweed's death. Relatedly, Brooks alleged that the police department's training failed to adequately prepare its employees "to exercise the requisite responsibility . . . to keep people alive" while in custody.

¶ 69 As with her first and second claims, these allegations don't demonstrate deliberate indifference. Nowhere did Brooks plead facts suggesting that the defendant supervisors knew that their allegedly inadequate supervision or training presented a substantial risk of harm to detainees. We also don't see any allegations

33

suggesting that the risk from their lax supervision and training was so obvious that a jury could reasonably infer such knowledge.

¶ 70    Accordingly, the district court didn't err by dismissing Brooks' supervisory liability claims for failure to state a claim under Rule 12(b)(5).

4.    Damages Remedy Under the Colorado Constitution

¶ 71    Brooks requests that we recognize a damages remedy against government actors who aren't peace officers covered by section 13-21-131 when they violate a pretrial detainee's rights under the Colorado Constitution.  In doing so, Brooks acknowledges that the supreme court in *Sundheim* refused to recognize a damages remedy under the state constitution but argues that the facts here are distinguishable.  She also requests that we recognize a damages remedy against the employer of a government actor who violates a person's state constitutional rights.  We decline her requests.

¶ 72    We have already concluded that Brooks failed to plausibly state a claim that any government actor violated Tweed's state constitutional rights.  Recognizing a damages remedy under the Colorado Constitution as Brooks requests wouldn't cure those

34

deficiencies. As a result, we need not address Brooks' requests.[9] *See Moss v. Bd. of Cnty. Comm'rs*, 2015 COA 35, ¶ 43.

¶ 73 Even if we considered Brooks' requests, we would deny them. In *Sundheim*, the supreme court "refuse[d] to recognize an implied cause of action" for damages arising from violations of rights secured by the Colorado Constitution. 926 P.2d at 549. While the court said it was limiting its refusal to the facts of that case involving a family's due process and equal protection challenges to a county's licensing and zoning determinations, *id.*, it also clarified that "where other adequate remedies exist, no implied remedy is necessary," *id.* at 553.

¶ 74 Brooks' own pleadings confirm that she has an adequate remedy under section 13-21-131 against the defendants who are peace officers. Moreover, she doesn't contest the district court's conclusion that § 1983 provides an adequate remedy against the defendants generally. In light of these other available remedies, we

---

[9] For the same reason, we don't reach Brooks' argument that government employers should be held vicariously liable when their employees commit state constitutional violations. We also offer no opinion on whether the division in *Ditirro v. Sando*, 2022 COA 94, resolved this question.

perceive no basis for distinguishing *Sundheim* or otherwise deviating from its binding holding. *See Herrera v. Lerma*, 2018 COA 141, ¶ 30 (divisions of the court of appeals are bound to follow supreme court precedent); *see also Young v. Larimer Cnty. Sheriff's Off.*, 2014 COA 119, ¶ 30 (declining to deviate from *Sundheim*, in part, because other state constitutional provisions authorized "specific remedies").

## C. Brooks' Wrongful Death Claim

¶ 75    Brooks contends that the district court erred by dismissing her wrongful death claim against the City for failure to state a plausible claim for negligence.[10] For its part, the City disagrees but also challenges Brooks' standing to bring a wrongful death claim in the first place. We reject the City's standing challenge but nonetheless perceive no error in the district court's dismissal of the wrongful death claim.

---

[10] Brooks originally brought her wrongful death claim against the City, Chief Pazen, Sheriff Diggins, and twenty-five Doe defendants. But the Doe defendants were never served, and Brooks has conceded on appeal that the wrongful death claims against Pazen and Diggins are time barred. *See* § 13-80-103(1)(c), C.R.S. 2025 (imposing a general statute of limitations of one year for claims against, among others, sheriffs and police officers).

36

## 1.  Standing

¶ 76  The City asserts Brooks lacked standing to bring her wrongful death claim because it challenged "whether Ms. Brooks' was really Mr. Tweed's common law spouse" in its motion to dismiss, and Brooks presented no evidence to overcome its challenge.

¶ 77  In a Rule 12(b)(1) motion to dismiss, a defendant may either (1) facially attack the sufficiency of the complaint's allegations regarding subject matter jurisdiction or (2) factually attack the complaint's allegations by presenting evidence challenging the factual basis for subject matter jurisdiction.  *See Archangel Diamond Corp. v. Arkhangelskgeoldobycha*, 94 P.3d 1208, 1213-14 (Colo. App. 2004), *aff'd in part and rev'd in part on other grounds sub nom., Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187 (Colo. 2005).  In reviewing a facial attack, the court must accept the complaint's allegations as true.  *Id.* at 1213.  But when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness.  *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001).  Instead, the court must weigh the evidence and has discretion to allow affidavits, documents, and a limited evidentiary

hearing to resolve disputed jurisdictional facts. *Id.*; *Archangel*, 94 P.3d at 1214.

¶ 78 Although the plaintiff bears the burden of proving subject matter jurisdiction, *Medina,* 35 P.3d at 452, a necessary prerequisite to a proper factual attack is that the court is presented with competing facts that require resolution. *See Const. Party v. Aichele,* 757 F.3d 347, 358 (3d Cir. 2014) (construing the defendant's motion as a facial attack, in part, because it didn't present competing facts); *cf. Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (explaining the defendant lodged a factual attack by "offering affidavits in support" of its challenge to the court's subject matter jurisdiction).[11]

¶ 79 Here, the City didn't present affidavits or other documents in support of its challenge to Brooks' status as Tweed's common law spouse. It also didn't request an evidentiary hearing in its motion to dismiss Brooks' amended complaint. Instead, the City simply argued that Brooks didn't "sufficiently allege she is a proper heir" of

---

[11] Because C.R.C.P. 12(b)(1) is largely identical to its federal counterpart, we look to federal authorities for guidance in construing the rule. *Trinity Broad. of Denv., Inc. v. City of Westminster,* 848 P.2d 916, 924 (Colo. 1993).

Tweed and "fail[ed] to plead facts sufficient to establish the existence of a common law marriage."

¶ 80    Because the City didn't present evidence in support of a factual attack or request an opportunity to do so, the district court was required to treat as true Brooks' allegation that she was Tweed's common law spouse. *See Archangel*, 94 P.3d at 1213; *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (party raised only a facial attack against federal jurisdiction because he failed to "offer any declaration or evidence" challenging the factual bases for jurisdiction and argued merely that the opposing party needed to support its jurisdictional allegations with "competent proof").

¶ 81    Accordingly, we reject the City's argument that Brooks lacked standing to bring the wrongful death claim.

2.    Additional Applicable Law and Standard of Review

¶ 82    While public entities are generally immune from liability for claims that lie in tort or could lie in tort, § 24-10-106(1), C.R.S. 2025, the General Assembly has waived sovereign immunity for injuries that result from the operation of a jail by a public entity, § 24-10-106(1)(b). As relevant here, a public entity isn't immune if

39

a claimant who is "incarcerated but not yet convicted of [a] crime . . . can show injury due to negligence." § 24-10-106(1.5)(b).

¶ 83    To prevail on a negligence claim, the plaintiff must prove "(1) that [a defendant] owed her a legal duty of care; (2) the defendant breached that duty; (3) injury to herself; and (4) causation." *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 23.

¶ 84    The existence and scope of the legal duty owed by a particular defendant to a particular plaintiff are questions of law that we review de novo. *English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004).

### 3.    Analysis

¶ 85    In the amended complaint, Brooks alleged that the City breached its duty to prevent Tweed's suicide while he was in custody.

¶ 86    We agree that this case turns on duty. To start, we have little difficulty concluding that the City owed Tweed *some* duty to protect him from self-harm while he was in custody. After all, no dispute exists that the City occupied a "special relationship" by having custodial control over Tweed. *Moore v. W. Forge Corp.*, 192 P.3d 427, 432 (Colo. App. 2007) (citing *English*, 99 P.3d at 94). And a division of this court has previously described a jailer's duty as

"receiv[ing] and safely detain[ing] every person duly committed thereto." *Howard v. City & County of Denver*, 837 P.2d 255, 257 (Colo. App. 1992).

¶ 87    But the parties cite no published Colorado case, and our independent research reveals none, addressing the *scope* of that duty. We therefore look to decisions in other jurisdictions that have considered the question. *See P.W. v. Child.'s Hosp. Colo.*, 2016 CO 6, ¶ 23 ("With no Colorado case directly on point, we look to the decisions of other jurisdictions for persuasive guidance.").

¶ 88    In *Cockrum v. State*, 843 S.W.2d 433, 436 (Tenn. Ct. App. 1992), the court surveyed decisions from across the county to determine whether prison officials have a duty to protect inmates from self-inflicted injury or death. The court explained that, although the scope of a custodian's duty generally doesn't extend to protecting inmates from self-inflicted injury or death, their duty can be "expanded" to encompass such obligations "when the prison officials know or should know that the prisoner might harm himself or herself." *Id.* Aligning itself with the "consistent[] hold[ings]" of courts in other jurisdictions, the court determined that a custodian

has a duty to protect inmates from "reasonably foreseeable self-destructive acts." *Id.*

¶ 89     While the foreseeability requirement gleaned in *Cockrum* arose in the prison context, courts addressing jail suicides have similarly required that the risk of self-inflicted harm or death be reasonably foreseeable to impose liability.  *See, e.g., Horne v. Beason*, 331 S.E.2d 342, 344-45 (S.C. 1985); *Kanayurak v. N. Slope Borough*, 677 P.2d 893, 897 (Alaska 1984); *Guice v. Enfinger*, 389 So. 2d 270, 271 (Fla. Dist. Ct. App. 1980).

¶ 90     We agree with the reasoning of these courts.  Like *Cockrum* and the decisions it cites, our supreme court has emphasized that "foreseeability is an integral element of duty."  *Westin Operator*, ¶ 33 n.5; *accord P.W.*, ¶ 26 (in a negligence suit against a hospital that admitted a suicidal patient and failed to prevent his suicide attempt, the plaintiff must still "prove that the defendant had a duty to prevent foreseeable harm"); *cf. Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46-47 (Colo. 1987) (holding that owners or occupiers of land open for business have a duty "to take reasonable measures to protect customers from injuries caused by the criminal acts of unknown third persons when such acts are generally foreseeable").

Given this legal landscape, we hold that a jailer has a duty to protect a detainee from self-inflicted injury or death only if the risk of such harm is reasonably foreseeable.

¶ 91    In this case, Brooks didn't allege any facts suggesting that the City (or any defendant) knew or should have reasonably foreseen that Tweed might take his own life.  While her amended complaint recounted Tweed's long history of trauma and mental health disorders, no allegation suggested that the City had access to this information or that Tweed communicated it upon being booked into the detention center.

¶ 92    Finally, although Brooks alleged that certain Doe defendants failed to reasonably assess and ascertain Tweed's mental health disorders when booking him into the detention center, we agree with the district court that those allegations were conclusory.  *See Woodall*, ¶ 8 (when evaluating a motion to dismiss under Rule 12(b)(5), a court need not accept bare or conclusory assertions as true).  Brooks' amended complaint didn't identify, for example, any specific screening techniques or questions that the intake officers should have used but didn't when assessing Tweed.

¶ 93    Accordingly, the district court didn't err by dismissing Brooks'
wrongful death claim under Rule 12(b)(5).

### III.    Appellate Attorney Fees

¶ 94    The Denver defendants expend three sentences of their answer
brief requesting appellate attorney fees under section 13-17-201(1),
C.R.S. 2025, asserting they have successfully defended on appeal
the district court's Rule 12(b) dismissal of Brooks' claims.  We
conclude their request is underdeveloped, so we deny it.  *See Sos v.
Roaring Fork Transp. Auth.*, 2017 COA 142, ¶ 59 (declining to
address undeveloped attorney fees request); *Sinclair Transp. Co. v.
Sandberg*, 2014 COA 75M, ¶ 14 n.1 (declining to consider attorney
fees issue "presented without any developed argument" and
supported "by only the most generic citation of authority").

¶ 95    The party requesting attorney fees bears the burden of proving
entitlement to such an award.  *Mosley v. Daves*, 2025 COA 80,
¶ 55.

¶ 96    Under section 13-17-201(1), the defendant "shall" be awarded
their attorney fees when the court dismisses a tort action on the
defendant's motion under Rule 12(b) before trial.  *See Gagne v.
Gagne*, 2014 COA 127, ¶ 74.  A defendant who successfully defends

a dismissal order on appeal is generally entitled to recover their reasonable appellate attorney fees. *See Kreft v. Adolph Coors Co.*, 170 P.3d 854, 859 (Colo. App. 2007). But the statute contains a safe harbor provision that precludes an award of attorney fees for any good faith, nonfrivolous claim filed for the express purpose of (1) changing existing law; or (2) establishing a law's meaning, lawfulness, or constitutionality that hasn't yet been determined by the Colorado Supreme Court or, for questions arising under the Federal Constitution, the United States Supreme Court. *See* § 13-17-201(2).

¶ 97    In addition, different criteria govern attorney fees and cost requests made by prevailing defendants in actions brought under section 13-21-131. Under that section, "[w]hen a judgment is entered in favor of a defendant, the court *may* award reasonable costs and attorney fees to the defendant for defending any claims the court finds frivolous." § 13-21-131(3) (emphasis added); *see also AA Wholesale Storage, LLC v. Swinyard*, 2021 COA 46, ¶ 29 (the word "may" generally indicates a grant of discretion). Put differently, a court must find that a claim is frivolous before exercising its discretion to award attorney fees or costs to a

45

prevailing defendant in an action brought under section 13-21-131. *See Waugh v. Veith*, 2025 COA 41M, ¶ 15.

¶ 98 We conclude for four reasons that the Denver defendants' request for appellate attorney fees isn't adequately developed. First, the Denver defendants haven't explained why this action — in which Brooks asserted three due process claims, one unreasonable seizure claim, and one negligence claim — constitutes a tort action that qualifies them for an award of attorney fees under section 13-17-201(1). Second, even if Brooks' suit were fairly characterized as a tort action, Brooks' amended complaint expressly invoked section 13-17-201(2)'s safe harbor in her three due process claims by advancing arguments for limiting *Sundheim.* Yet the Denver defendants fail to explain how the safe harbor affects their attorney fees request. Third, the Denver defendants don't argue that Brooks' four claims brought under section 13-21-131, or her appellate arguments related to those claims, were frivolous. *See* § 13-21-131(3); *Waugh*, ¶ 15. Finally, even if Brooks' claims under section 13-21-131 could be viewed as frivolous, the Denver defendants don't explain why we should exercise our discretion to award them attorney fees for responding to those claims.

¶ 99    Accordingly, we deny the Denver defendants' request for appellate attorney fees.

## IV.    Disposition

¶ 100    We affirm the district court's order granting the Denver defendants' and the hospital defendants' motions to dismiss Brooks' amended complaint and deny the Denver defendants' request for attorney fees.

JUDGE FOX and JUDGE KUHN concur.